YATES, Judge.
The parties were divorced on March 27, 1990. By agreement, the mother was given custody of the parties’ minor child, who was at that time 3 years old, with the father having scheduled visitation. The father was to pay $100 per month as child support.
On February 5, 1993, the State Department of Human Resources (DHR), on behalf of the mother, filed a petition seeking support for the child from the father. The mother had applied for, and had been receiving, financial assistance from the State.
On March 24, 1993, the father filed a petition for a rule nisi and to modify the judgment of divorce, seeking custody of the child. He alleged that since the divorce the mother had refused to allow him any visitation with the child. He stated that the mother had moved several times and had lived in Wisconsin with the child, and that he had not seen the child or known the mother’s whereabouts since before the divorce. He further stated that he had not paid the ordered child support only because he did not know the whereabouts of the mother and child and that when he filed his petition, the only address that he *889 had for the mother was that of the DHR office in Shelby County.
On April 29, 1998, the mother counter-petitioned for a rule nisi and to modify the divorce judgment, seeking a judgment against the father for child support arrearage and seeking an increase in the monthly child support award.
After a hearing, the trial court entered an order on May 27, 1993, finding:
“Based upon the testimony and evidence presented, the Court finds that there has occurred, since the rendition of the Final Judgment of Divorce, such a change of circumstances affecting the welfare of the minor child as to necessitate a custodial change.
[[Image here]]
“A. The [mother] has moved frequently since the divorce and has not allowed the [father] to visit with his child since the divorce, nor allowed the [father] to know the whereabouts of the minor child.
“B. The [mother] has, since the divorce, lived openly with her ‘boyfriend’ in the residence with the minor child.
“C. The minor son has been retained in the [first] grade and has not been promoted with his peers.
“D. The [mother] is unemployed and drawing welfare for herself and the minor son.
“E. The [father] has remarried and established a wholesome home environment which will greatly benefit the minor son.
“F. The [father’s] parents live in this area, and will be able to give support to the [father] in his rearing of the child.
[[Image here]]
“H. [The father] has failed to pay said child support payments and is now in arrears in the sum of Thirty Eight Hundred Dollars ($3,800.00).
“I. [The father’s] failure to pay is not based upon his contumacy.
“Based upon the above findings of fact, and in consideration of the welfare of the minor child, the Court finds that the benefits to the minor son resulting from a change in custody outweigh the presumption against such a change.”
The mother appeals.
The dispositive issue is whether the trial court erred in modifying the custody award to place custody with the father. The mother contends that the change of custody was not supported by the evidence and that the father did not meet the proper burden of proof.
We note that a presumption of correctness is afforded a judgment of the trial court that is based on findings made from evidence presented ore tenus. Taft v. Taft, 553 So.2d 1157 (Ala.Civ.App.1989). In a modification proceeding where custody is transferred to a noncustodial parent, the proper standard is set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984). In order to transfer custody to the noncustodial parent, that parent must show that a change of custody “materially promotes the child’s best interest and welfare.” McLendon, 455 So.2d at 866. The mother correctly states that visitation problems alone are not sufficient to justify a custody change. Pons v. Phillips, 406 So.2d 932 (Ala.Civ.App.1981), cert. denied, 406 So.2d 935 (Ala.1981). However, the record in this case reveals more than a mere visitation problem. Here, in total disregard of the divorce judgment, for three years the mother refused to allow the father access to the child, refusing to reveal her address to the father.
The mother admitted that she had never let the father know how to reach her and that since the divorce the father had had limited information concerning the child. She further admitted that she had on several occasions told the father that she did not know whether he could visit the child because she did not know what her plans were. The mother testified that she had been unemployed since before the divorce and that she was receiving public assistance. She stated that she was cohabiting with Tommy Lawson.
The father testified that since the time of the divorce he had been employed full-time at a department store, earning $7.15 per hour, and that he had remarried. His pres *890 ent -wife supported his decision to seek custody of his son. He stated that the mother had told him that he could not visit the child because she was “getting back at him” for divorcing her, and because she said visitation would make Lawson feel “uncomfortable.” The father testified that the mother also told him that she did not want to disrupt their “family” and have complications from an outside party.
Lawson testified that, until about a month before trial, he had objected to the father’s seeing the child. Lawson stated that he had told the mother that it would confuse the child to have “two father figures.”
The evidence established that the mother had effectively prevented the father from establishing a relationship with his child. Our review supports the trial court’s findings that the benefits to the child resulting from a change in custody outweigh the presumption against such a change.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.